**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| PNC Bank, National Association, successor to National City Bank, )<br>　　　　　　　　Plaintiff, )<br>　　v. )<br> )<br>Glenn Udell; Pamela Udell; Sorrento Enterprises, )<br>LLC; Sorrento Enterprises, LLC – Series A; )<br>Sorrento Enterprises, LLC – Series B; Sorrento )<br>Enterprises, LLC – Series C; Sorrento Enterprises, )<br>LLC – Series D; Sorrento Enterprises, LLC – Series )<br>E; Sorrento Enterprises, LLC – Series F; Sorrento )<br>Enterprises, LLC – Series G; Sorrento Enterprises, )<br>LLC – Series H; Sorrento Enterprises, LLC – Series )<br>I; Sorrento Enterprises, LLC – Series J; Sorrento )<br>Enterprises, LLC – Series K; Sorrento Enterprises, )<br>LLC – Series L; Sorrento Enterprises, LLC – Series )<br>M; Sorrento Enterprises, LLC – Series N; Sorrento )<br>Enterprises, LLC – Series O; Sorrento Enterprises, )<br>LLC – Series P; Sorrento Enterprises, LLC – Series )<br>Q; Sorrento Enterprises, LLC – Series R; Sorrento )<br>Management, Inc. and Chicago Title Land Trust as )<br>trustee under trust agreement dated May 19, 2008 )<br>and known as trust number 8002350906, )<br> )<br>　　　　　　　　Defendants. ) | Case No. 16 CV 5400 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
<u>COUNTS V, VI AND VII OF PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

NOW COME Defendants PAMELA UDELL ("Pamela"), SORRENTO ENTERPRISES, LLC ("Sorrento"), SORRENTO ENTERPRISES, LLC—SERIES A ("Sorrento A"), SORRENTO ENTERPRISES, LLC—SERIES B ("Sorrento B"), SORRENTO ENTERPRISES, LLC—SERIES C ("Sorrento C"), SORRENTO ENTERPRISES, LLC—SERIES D ("Sorrento D"), SORRENTO ENTERPRISES, LLC—SERIES E ("Sorrento E"), SORRENTO ENTERPRISES, LLC—SERIES F ("Sorrento F"), SORRENTO ENTERPRISES, LLC—SERIES G ("Sorrento G"), SORRENTO ENTERPRISES, LLC—SERIES H ("Sorrento H"), SORRENTO ENTERPRISES, LLC—SERIES I ("Sorrento I"), SORRENTO ENTERPRISES,

LLC—SERIES J ("Sorrento J"), SORRENTO ENTERPRISES, LLC—SERIES K ("Sorrento K"), SORRENTO ENTERPRISES, LLC—SERIES L ("Sorrento L"), SORRENTO ENTERPRISES, LLC—SERIES M ("Sorrento M"), SORRENTO ENTERPRISES, LLC—SERIES N ("Sorrento N"), SORRENTO ENTERPRISES, LLC—SERIES O ("Sorrento O"), SORRENTO ENTERPRISES, LLC—SERIES P ("Sorrento P"), SORRENTO ENTERPRISES, LLC—SERIES Q ("Sorrento Q"), SORRENTO ENTERPRISES, LLC—SERIES R ("Sorrento R"), and SORRENTO MANAGEMENT, INC. ("Sorrento Management"), and CHICAGO TITLE LAND TRUST as trustee under trust agreement dated May 19, 2008 and known as trust number 8002350906 ("Defendants"), and for their Reply in Support of Defendants' Motion to Dismiss Counts V, VI and VII [mis-numbered as a duplicate "Count VI"] of Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

I. **ARGUMENT**

    A. **PNC STILL HAS NOT SHOWN THAT IT CAN SPLIT ITS SUPPLEMENTARY PROCEEDINGS BY ATTEMPTING TO BRING A STAND-ALONE CAUSE OF ACTION IN FEDERAL COURT SEEKING A NOMINEE DETERMINATION.**

In Count V of its First Amended Complaint, PNC seeks not just a declaration that Sorrento is a nominee of Glenn, but a "turnover [of] all of G. Udell's assets held by Sorrento" as a purported nominee of Glenn. PNC largely bases its theory of collection upon a determination made by this Court in *Dexia Credit Local v. Rogan*, 2008 WL 4543013, Case No. 02 C 8288 (N.D. Ill. Oct. 9, 2008) (attached to Motion to Dismiss as Exhibit A). (*See* Doc. No. 58, First Amended Complaint at pp. 14-15 (Count V prayer for relief).) However, this Court's authority to make the nominee determination in *Dexia* expressly derived from the character of that proceeding; specifically, the administration of a supplementary proceeding to enforce a money judgment pursuant to the Illinois' supplemental proceedings statute (i.e. 735 ILCS 5/2-1402). *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 624 (7th Cir. Ill. 2010) (affirming turnover

following nominee determination on the basis that the determination was properly within the scope of statutorily-conducted supplemental proceedings).

PNC admits that it has utilized the state court supplemental proceedings to attempt to enforce its judgment against both Glenn and Sorrento, the exact relief PNC seeks against Sorrento in Count V of its First Amended Complaint. Although PNC disingenuously contends that Count V "seeks nothing more than to resolve whether Sorrento and its Series hold titles to the Subject Assets as nominees for Glenn" (Doc. No. 74, Response Br. at 4), Count V seeks not just a declaration, but actual "turnover [of] all of G. Udell's assets held by Sorrento and its Series." (Doc. No. 58, First Amended Complaint at pp. 14-15 (Count V prayer for relief).) This is the precise function of the state court supplemental proceedings, and since a supplementary proceeding is currently pending in state court, it should be the exclusive venue for the relief PNC seeks in Count V. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 622-24 (7th Cir. Ill. 2010) (in affirming turnover following nominee determination made in the course of Illinois statutory supplemental proceedings conducted in federal court, the Seventh Circuit noted that the relief granted was within the proper scope of supplemental proceedings, because the supplemental proceedings statute authorizes the court "to compel the application of discovered assets or income in order to satisfy a judgment") (quoting *Kennedy v, Four Boys Labor Serv., Inc.,* 279 Ill. App. 3d 361, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996)).

PNC further admits that it is seeking, through Count V, to enforce citation liens that purportedly arose by its service of citations on Glenn and Sorrento in state court. (Doc. No. 74, Response Br. at 5 (relief necessary because "Glenn's transfers have negatively impacted PNC's automatic liens on the assets of Glenn that arise by virtue of PNC's citation to Glenn . . . ." (relying on state court supplemental proceedings statute)); *id.* (if relief granted under Count V, "the Subject Assets will then be encumbered by the lien created by PNC's citation. . . .").)

Despite PNC's attempted misdirection, there can be no doubt that Count V of the First Amended Complaint is an attempt by PNC to conduct the exact kind of supplemental proceedings that PNC initiated in state court. PNC could have initiated its supplemental proceedings in federal court, but chose to proceed in state court. Despite being challenged to do so, PNC still cites no authority that it can engage in supplemental proceedings under the Illinois supplemental proceedings statute to enforce its judgment against the same party (Sorrento) in both state and federal courts simultaneously.

Thus, the *Dexia*-style nominee determination sought by PNC here has only been applied in supplemental proceedings, because the authority to make the determination derives from Illinois' supplemental proceedings statute. The only other nominee cases relied upon by PNC in its response brief are unreported cases that involved the application of the nominee theory in the adjudication of tax assessment proceedings originating in federal court. The courts in those cases did not need to rely on a state supplemental proceedings statute for authority to make the nominee determination because the proceedings were conducted under other federal statutory authority. *See United States v. Mayfield,* Case No. NO 92-72-C, 1994 WL 764114, *5 (S.D. Ind. Oct. 22, 1994) ("Section 7403 of the Internal Revenue Code authorizes the United States to bring an action, such as the instant case, to enforce federal tax liens against specific property to collect the tax.") (attached to Response Br. as Exhibit F); *Barmes v. I.R.S.,* Case No. TH 97-287-C-T/F, 2004 WL 1005493, (S.D. Ind. March 29, 2004) (granting summary judgment to United States in federal tax lien enforcement action) (attached to Response Br. as Exhibit G). None of these cases establishes authority, outside the scope of a supplemental proceeding being conducted pursuant to the Illinois' supplemental proceedings statute, for a private party to seek a nominee determination in connection with the enforcement of a money judgment – and to compel the turnover of assets, as PNC seeks here. This case is not a supplemental proceeding being

conducted under the Illinois supplemental proceedings statute – those proceedings remain pending in state court. As such, PNC has failed to demonstrate that this Court possesses authority to make the *Dexia*-style nominee determination sought in Count V, and therefore that count of PNC's First Amended Complaint should be dismissed.

    **B.    PNC'S CLAIM FOR UNJUST ENRICHMENT FAILS BECAUSE TRANSFERS MADE WHEN GLENN HAD NO PRESENT OBLIGATION TO PAY PNC ARE NEITHER WRONGFUL NOR MADE WHEN PNC HAD A SUPERIOR RIGHT TO PAYMENT.**

In their Motion to Dismiss, Defendants showed that Glenn's alleged conferring of a benefit on Sorrento and its Series cannot be held to be wrongful or made at a time when PNC had a superior claim to the assets transferred because PNC has not alleged that Glenn had any actual obligation to pay PNC at the time of the challenged transfers. PNC does not dispute that it filed its complaint for breach of guaranty on May 21, 2009, which is after the challenged transfers relating to the transfer of the limited liability companies, Galena property or life insurance policies. (*See* Motion to Dismiss at p. 6. (detailing PNC's transfer allegations).) While PNC improperly goes outside the four corners of its Complaint to argue that Glenn represented in his guaranty that he would not transfer assets (Response brief at 8, relying on Defendants' Local Rule 56.1 statement), even if properly considered, PNC cites no authority that a guarantor's claimed breach of a representation creates an immediate right of payment without any declaration of default as to either the borrower or guarantor. *See Mid-City Indus. Supply Co. v. Horwitz,* 132 Ill. App. 3d 476, 483, 476 N.E.2d 1271 (1st Dist. 1985) (proof of debtor's default required to recover on guaranty). As such, PNC has not established that the transfers were made at a time when PNC had a superior right to payment.

Defendants' additionally argued that, with respect to a potential unjust enrichment claim, Glenn's activities with respect to wages is neither wrongful nor arose when PNC had a superior right of payment because the only recognized method for enforcing a money judgment against

5

unpaid wages is to utilize Illinois' wage garnishment statute. (*See* Doc. No. 70, Motion to Dismiss at 7-8 and n.3.)

PNC's only response is to cite a case where the Illinois Wage Garnishment Act was held completely inapplicable, and inapposite bankruptcy court cases that consider a different question – whether the exemption unquestionably provided under the Illinois Wage Deduction Act creates a bankruptcy code exemption to exclude such wages from a debtor's bankruptcy estate. (*See* Response Br. at 8.) In *Weinco, Inc. v. Scene Three, Inc.,* 29 F.3d 329 (7th Cir. 1994), the court found the Illinois Wage Garnishment Act completely inapplicable, because the money judgment was not being enforced against employer-paid wages. *Weinco,* 29 F.3d at 329-30 (finding debtor's argument "absurd" because "[t]he [Illinois Wage Garnishment] Act is clearly inapplicable, the district court's order [for payment of 25% of future income] is directed to [debtor] himself and to no one else.").

In the bankruptcy cases, those courts considered the question of whether Illinois' wage exemption created a corresponding bankruptcy exemption. *See In re Thum,* 329 B.R. 848, 849 (N.D. Ill. Bankr. 2012) ("The question raised in this case is whether [the Illinois wage statutes] should be construed as creating an exemption . . . allowed to a debtor in bankruptcy. . . ."); *In re Peter Jokiel,* 2012 WL 33246 (N.D. Ill. Bankr. 2012) (issue to be decided is whether the Illinois Wage Deduction Act "create[s] an exemption for Bankruptcy purposes"). And even with respect to that question, the decisions of the bankruptcy courts have not been uniform. *Compare In re Jokiel* (no bankruptcy exemption), with *In re Mayer*, 388 B.R. 869, 874 (Bankr. N.D. Ill. 2008) (Illinois wage statute did create bankruptcy exemption).

Moreover, neither of the two additional cases cited by PNC supports the claim that Glenn had to petition for an exemption for the statutory limit on wage garnishment to be applicable. (Response Br. at 8.) Neither case addresses, let alone holds, that there is a requirement that a

debtor file a petition to invoke the exemption that limits a creditor enforcing a money judgment to all but 15% of gross wages as automatically provided in 735 ILCS 5/12-803. (*See* Response Br. at 8, citing *Guess v. Chang,* 912 F. Supp. 372, 378 (N.D. Ill. 1995); *City of Chicago v. Air Auto Leasing Co.,* 279 Ill. App. 3d 873, 877 (1st Dist. 1998).)

Accordingly, PNC's suite of inapposite cases do nothing to refute the point that – with respect to an unjust enrichment claim -- PNC did not possess a superior right to Glenn's wages, and no disposition of his wages could otherwise be wrongful if not made in derogation of an obligation to pay them over to PNC pursuant to a wage deduction order.

Count VI of PNC's First Amended Complaint should be dismissed.

### C. PNC CANNOT SHOEHORN ITS ALLEGATIONS INTO A CLAIM FOR SUCCESSOR LIABILITY.

As shown in Defendants' Motion to Dismiss, Count VII [mis-numbered as a duplicate Count VI] of PNC's First Amended Complaint fails because there are no allegations of the kind of "successorship" to which the doctrine of successor liability has ever been applied. In order for PNC to successfully state a claim for successor liability, as stated in its own response brief, it must allege that Glenn was a sole proprietor that transferred assets to a corporation in addition to alleging at least one of the four exceptions to the principal that successor corporations are generally not liable for the debts of its predecessors. (Doc. No. 74, Response Br. at 9). Despite PNC's repeated attempt to hammer a square peg in a round hole, it fails the condition precedent to falling within one of the four established exceptions because it cannot allege that Glenn was a sole proprietor.

Instead, PNC attempts to promulgate new law by arguing that an individual's personal investments create a series of sole proprietorships to which a theory of successor liability is applicable. (Doc. No. 74, Response Br. at 10). PNC asserts that its allegations of the Amended

Complaint somehow establish that "Glenn was in the business of real estate investment and that . . . he transferred all of the assets related to the real estate investments to Sorrento." *Id.*

PNC cites no authority that merely making one or more investments in real estate creates a sole proprietorship. If a practicing attorney were to make side investments in mutual funds, gold, and antique cars, would the attorney logically be considered to be simultaneously operating a brokerage house, a precious metals exchange and a car dealership as sole proprietorships? Of course not. There is no allegation that Glenn held himself out to be a sole proprietorship in the business of real estate investment, incurred obligations on that basis, and then changed the corporate form of that sole proprietorship.

What PNC actually alleges in its Complaint is that it made a loan to a different business entity, 9362 Joint Venture, LLC, which owned and operated the property on which PNC foreclosed, and that Glenn only provided a personal guaranty of that loan. (*See, e.g.,* Doc. No. 58, First Amended Complaint at ¶ 12.) That business, structured as a limited liability company consisting of multiple members, cannot be construed as a sole proprietorship of Glenn. Moreover, PNC did not allege in the Complaint that the assets of the entity (9362 Joint Venture, LLC) that owned and operated the property, and was the principal obligor to PNC, were transferred away or converted into some other successor business form. If they had, perhaps a successor liability analysis might be triggered as to whether the debts of 9362 Joint Venture, LLC are enforceable against some successor entity. But that is not the case here.

As to Glenn, PNC alleges only that he "is an attorney with the law firm of Brown Udell Pomerantz & Delrahim, Ltd.," not that he operated any other business as a sole proprietorship. (*Id.* at ¶13.) Moreover, in a futile attempt to shoehorn its claims into an inappropriate successor liability theory, PNC, in its response brief, characterizes the allegations of its First Amended Complaint to be that Glenn operated as a sole proprietorship, but "transferred all of ***the assets***

*related to the real estate investments* to Sorrento." (Doc. No. 74, Response Br. at 10 (emphasis added)). But PNC's actual allegations contradict the coloration PNC now tries to give them. First, as previously stated, PNC failed to allege Glenn was a sole proprietor – simply because it cannot. Second, the transfers that PNC is challenging are not transfers of assets related to the 9362 Joint Venture, LLC business, but instead transfers of what PNC explicitly alleges are "personal assets," such as a vacation home, life insurance policies, and income from Glenn's work as an attorney. (Doc. No. 58, First Amended Complaint at ¶¶ 20, 21, 23-25.)

Moreover, all of PNC's supposed authority related to the potential successor liability of sole proprietorships is distinguishable. Every case involved the purchase of all of the assets of a business for purposes of continuing that ongoing business, and whether the corporate debts incurred in one form were enforceable against the successor. *Plaza Express Company v. Middle States Motor Freight, Inc.,* 40 Ill. App. 2d 117, 189 N.E. 2d 382 (1st Dist. 1963) (whether subsequent incorporation of a trucking business defeated property damage claim that arose while the business was being operated as a sole proprietorship); *Clayton v. Planet Travel Holdings, Inc.*, 2013 IL App (4th) 120717 (Ill. App. Ct. 2013) (whether operation of a travel agency business, being conducted at various times as a corporation and a sole proprietorship, subjected the sole proprietor to liability for the failure to refund unearned fees received); *GMAC, LLC v. Hillquist*, 652 F. Supp. 2d 908 (N.D. Ill. 2009) (effect of subsequent incorporation of car dealership operated as sole proprietorship; successor liability did not apply); *Firkin v. United States Polychemical Corp.*, 835 F. Supp. 1048 (N.D. Ill. 1993) (effect of incorporation of sole proprietorship printing business on tort liability based on errors made in printing a warning label). Simply put, the doctrine of successor liability is not recognized as an alternative basis for liability for unrelated personal debts where the defendants have not been engaged in, and succeeded to, some ongoing business enterprise.

For the foregoing reasons, Count VII of PNC's First Amended Complaint should be dismissed, with prejudice.

**WHEREFORE**, Defendants PAMELA UDELL, SORRENTO ENTERPRISES, LLC, SORRENTO ENTERPRISES, LLC—SERIES A, SORRENTO ENTERPRISES, LLC—SERIES B, SORRENTO ENTERPRISES, LLC—SERIES C, SORRENTO ENTERPRISES, LLC—SERIES D, SORRENTO ENTERPRISES, LLC—SERIES E, SORRENTO ENTERPRISES, LLC—SERIES F, SORRENTO ENTERPRISES, LLC—SERIES G, SORRENTO ENTERPRISES, LLC—SERIES H, SORRENTO ENTERPRISES, LLC—SERIES I, SORRENTO ENTERPRISES, LLC—SERIES J, SORRENTO ENTERPRISES, LLC—SERIES K, SORRENTO ENTERPRISES, LLC—SERIES L, SORRENTO ENTERPRISES, LLC—SERIES M, SORRENTO ENTERPRISES, LLC—SERIES N, SORRENTO ENTERPRISES, LLC—SERIES O, SORRENTO ENTERPRISES, LLC—SERIES P, SORRENTO ENTERPRISES, LLC—SERIES Q, SORRENTO ENTERPRISES, LLC—SERIES R, SORRENTO MANAGEMENT, INC., and CHICAGO TITLE LAND TRUST as trustee under trust agreement dated May 19, 2008 and known as trust number 8002350906 respectfully request that the Court enter an Order dismissing Counts V-VII of Plaintiff's First Amended Complaint, with prejudice, and for such other and further relief as this Court deems just and appropriate.

| | |
|---|---|
| March 30, 2017 | Respectfully Submitted, |
| | Pamela Udell; <br> Sorrento Enterprises, LLC; <br> Sorrento Enterprises, LLC – Series A-R; <br> Sorrento Management, Inc.; and Chicago Title Land Trust as trustee under trust agreement dated May 19, 2008 and known as trust number 8002350906, |
| Andrew A. Jacobson, ARDC #6211224 <br> **Brown, Udell, Pomerantz & Delrahim, Ltd.** <br> 1332 N. Halsted Street, Suite 100 <br> Chicago, Illinois 60642 <br> 312.475.9900/312.475.1188 (fax) <br> ajacobson@bupdlaw.com | By: _/s/ Andrew A. Jacobson_ <br> One of their attorneys |